IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARGARET C. M., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | No. 3:21-cv-00947-B-BT |
| § | |
| KILOLO KIJAKAZI, ACTING § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Margaret C. M.'s[1] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. (ECF No. 1). The District Court referred the case to the United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. (ECF No. 4). For the reasons explained below, the District Court should REVERSE the Commissioner's decision and REMAND the case for further administrative proceedings.

---

[1] The Court uses only Plaintiff's first name and initials as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## Background

Plaintiff alleges that she is disabled due to fibromyalgia, whole body pain and weakness, migraines, depression, anxiety, PTSD, abdominal and pelvic pain, back pain, and bilateral knee pain. Admin. R. 270 (ECF No. 13-1); *see* Pl.'s Br. 5-16 (ECF No. 18). She was born in 1979 and was 41 years old on the date of her alleged disability onset. Admin. R. 34, 266. Plaintiff has more than a high school education and can communicate in English. *Id.* at 34, 269, 271. She has past work experience as a customer service representative and office manager. *Id.* at 63-64.

On April 2, 2018, Plaintiff applied to Social Security for disability benefits. *Id.* at 20. After her application for disability-insurance benefits was denied initially and upon reconsideration by the Commissioner, Plaintiff requested a hearing before an administrative law judge (ALJ). *Id.* The hearing took place in Dallas, Texas, on August 14, 2020. *Id.*

The ALJ determined that Plaintiff was not disabled and therefore not entitled to disability benefits. *Id.* At step one of the five-step sequential evaluation,[2]

---

[2] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted).

the ALJ found Plaintiff had not engaged in substantial gainful activity since May 21, 2016. *Id.* at 22. At steps two and three, the ALJ found that Plaintiff had severe impairments of degenerative disc disease with chronic back pain, chronic pelvic pain, fibromyalgia, obesity, headaches, depression, anxiety, and personality disorder, but Plaintiff's impairments, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id.* At step four, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform sedentary work with some limitations, but Plaintiff could not perform her past work. *Id.* at 31-34. At step five, relying on the testimony of a vocational expert (VE), the ALJ found that Plaintiff could work as a document preparer, charge account clerk, and cutter and paster—jobs that exist in significant numbers in the national economy. *Id.* at 34-35.

Plaintiff appealed the ALJ's decision to the Appeals Council. *See id.* at 6. The Council denied review. *Id.* Plaintiff then filed this action in federal district court, in which she contends the ALJ erred in finding her not disabled. Specifically, Plaintiff argues: (1) the ALJ's RFC failed to account for her need to use a wheelchair and for an emotional support animal; and (2) the ALJ failed to follow the

---

A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

regulatory requirements for evaluating medical opinion evidence. Pl.'s Br. 1. The issues have been fully briefed, and the matter is ripe for determination.

## Legal Standards

The Court's "review of Social Security disability cases is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citation and internal quotations omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance." (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)) (citation and internal quotation marks omitted)).

The ALJ, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citation omitted). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the ALJ stated to support his decision. *Copeland*, 771 F.3d at 923 (citation omitted).

## Analysis

Among Plaintiff's arguments is at least one ground that compels remand: the ALJ's RFC finding is not supported by substantial evidence because it does not account for Plaintiff's need to use a wheelchair.

In his written decision, the ALJ recognized that Plaintiff's doctor prescribed her the use of a wheelchair and a disability parking placard due to "impaired mobility" resulting from lumbar radiculopathy. Admin. R. 21-22, 27, 1012, 1058, 1065. Yet, the ALJ did not account for Plaintiff's need to use a wheelchair in his RFC finding. Instead, the ALJ determined Plaintiff had the physical RFC "to perform sedentary work . . . such that [she can] lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; walk or stand two hours of an eight-hour workday; and sit for six hours of an eight-hour workday." *Id.* at 31. Plaintiff correctly contends the record supports her need to use a wheelchair and the ALJ's failure to account for that need in his RFC determination constitutes error requiring remand. *See, e.g.*, *Reese v. Saul*, 2020 WL 6804513, at *3-7 (S.D. Tex. Nov. 3, 2020).

RFC is the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hill v. Saul*, 2020 WL 6370168, at *6 (N.D. Tex. Sept. 29, 2020) (Ramirez, J.) (internal quotations omitted) (quoting *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir.

1988) (per curiam)), *rec. adopted*, 2020 WL 6363878 (N.D. Tex. Oct. 29, 2020) (Lindsay, J.). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An individual's RFC should be based on all relevant evidence in the case record, including opinions submitted by medical sources. 20 C.F.R. at § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *1.

The ALJ bears the "sole responsibility for determining the [plaintiff's] disability status." *Thibodeaux v. Astrue*, 324 F. App'x 440, 443 (5th Cir. 2009) (citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)). "Determining a [plaintiff's RFC] is the ALJ's responsibility, and [the ALJ] has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [the ALJ's] findings." *Hill*, 2020 WL 6370168, at *6 (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting" the ALJ's decision. *Hill*, 2020 WL 6370168, at *6 (quoting *Martin v.*

*Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)). A no-substantial-evidence finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Hill*, 2020 WL 6370168, at *6 (citing *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988)).

  1. <u>The ALJ misconceived the evidence and based his RFC analysis on factual mistakes related to Plaintiff's need for a wheelchair.</u>

"To find that a [handheld] assistive device [such as a cane or wheelchair] is medically required, there must be medical documentation establishing the need for the device to aid in walking or standing and describing the circumstances for which it is needed." *Heather H. v. Kijakazi*, 2021 WL 4138406, at *8 (S.D. Tex. Sept. 10, 2021) (first citing SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996); and then citing *Temple v. Saul*, No. 4:19-cv-3320, 2020 WL 6075644, at *3 (S.D. Tex. Oct. 14, 2020)). When determining whether an assistive device is medically required, an ALJ must consider "the particular facts of a case" based on the evidence of the need for the device and the circumstances for which it is needed. *Id.* (citing *Temple*, 2020 WL 6075644, at *3). The ALJ errs when he ignores medical records documenting a plaintiff's need for an assistive device. *Id.* (remanding when ALJ ignored medical records documenting need for assistive devices and failed to account for that need in his RFC determination).

Here, Plaintiff met her burden of establishing that a handheld assistive device is medically required. *See Heather H.*, 2021 WL 4138406, at *8 (citing *Temple*, 2020 WL 6075644, at *3). On November 7, 2017, Plaintiff presented to a

doctor with an abnormal gait; she was advised by the doctor to use a cane if necessary; and the doctor prescribed a disability placard for Plaintiff's vehicle for temporary use, expecting that Plaintiff would improve with treatment. Admin. R. 506-09. On December 8, 2017, a doctor's note confirms Plaintiff used an electric scooter to get through her shopping trips and used a cane as well. Plaintiff alleged that her legs would tire and hurt if she walked too far (1-3 blocks); she was sitting uncomfortably and leaning; she had difficulty acquiring a full, upright position when getting out of a chair; and her gait was antalgic. *Id.* at 940-46. On December 19, 2017, a doctor noted Plaintiff had difficulty standing and walking. *Id.* at 828. On February 13, 2018, a doctor again noted Plaintiff used an electric scooter to get through her shopping trips and used a cane as well, and Plaintiff had no improvement. *Id.* at 936-40. On May 2, 2018, a doctor noted Plaintiff was still in pain and could barely walk into the doctor's office. *Id.* at 990. On June 27, 2018, a doctor renewed Plaintiff's disability placard for her car without any indication that her symptoms improved. *Id.* at 847, 851. Plaintiff had ongoing issues with abdominal and back pain with impaired mobility. *Id.* On August 27, 2018, a doctor that the ALJ found persuasive noted that Plaintiff's "gait and posture appeared to be impaired, as she ambulated slowly and steadily." *Id.* at 33, 855. This doctor also noted that Plaintiff "used an electric chair if she went out." *Id.* at 856. On December 10, 2018, Plaintiff arrived at the doctor in a wheelchair and her gait was not tested. *Id.* at 995, 998. On July 21, 2019, Plaintiff was prescribed another disability placard and a wheelchair. *Id.* at 1063, 1070.

Moreover, Plaintiff's hearing testimony was consistent with her medical records. Plaintiff stated she could "stand for extremely brief periods of time . . . no more than five to ten minutes;" and could "only walk for very short [distances] . . . less than half a block." *Id.* at 51-52. Plaintiff also confirmed that she was prescribed disability placards and a wheelchair. *Id.* at 52. When her attorney asked her "why was that?", Plaintiff responded "because if I want to make any plans to go on any sort of outing . . ., I would have to have the wheelchair to be able to keep up with my friends . . . because I wouldn't be able to walk any sort of distance with my friends and family." *Id.* Plaintiff provided two examples of places she might go—"the fair or the park with friends." *Id.*

The ALJ misconstrued the evidence related to Plaintiff's need to use a handheld assistive device to ambulate and failed to include any limitations in his RFC for a wheelchair. Although the ALJ acknowledged that Plaintiff "had slow gait, and she appeared to be in pain" and "she also chose to use a cane at times, and she was prescribed a wheelchair, *id.* at 32, he determined Plaintiff's use of a wheelchair was not medically required. The ALJ based his decision on his misunderstanding that Plaintiff needed the wheelchair only "to facilitate outings with others," that "[s]he did not appear to be prescribed a cane[] or need it at all times," and that Plaintiff "asked for the wheelchair prescription for outdoor activities." *Id.* The ALJ further dismissed the prescription of disability placards for Plaintiff's vehicle based on his misconception that: "[t]he prescription is . . . temporary, and . . . although it was renewed, . . . [Plaintiff] was expected to improve with treatment." *Id.* at 33

(citing *id.* at 506-09). In support of his findings, the ALJ cited only one doctor's note, the one from December 7, 2017, that stated Plaintiff had a normal gait and did not need an assistive device to ambulate. *Id.* at 503.

Contrary to the ALJ's findings, Plaintiff was advised by a doctor to use a cane as necessary. And while Plaintiff testified that she used a prescribed wheelchair for outings with others, Plaintiff never testified that she asked for the wheelchair prescription or that the wheelchair was prescribed only for outdoor activities. Further, although Plaintiff's doctor prescribed the disability placard on a temporary basis in 2017 because the doctor expected Plaintiff to improve with treatment, Plaintiff did not improve, and the prescription for a placard was renewed in 2018 and again in 2019. The doctor did not mention any expectation of improvement when the placard was renewed. Finally, nothing in the record suggests that Plaintiff no longer needs an assistive device to ambulate. Rather, the record documents that Plaintiff's need for an assistive device increased from 2017 to 2019.

    2. <u>The ALJ's factual mistakes were not harmless error</u>.

Because "[p]rocedural perfection in administrative proceedings is not required," *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988), "a mistake in an ALJ's decision does not automatically render the entire decision unsupported by substantial evidence." *Botsay v. Colvin*, 658 F. App'x 715, 718 (5th Cir. 2016). Instead, "the Fifth Circuit has applied the harmless error standard where the ALJ misstated the medical evidence." *Robinson v. Colvin*, 2015 WL 5725134, at *8 (E.D.

10

La. Sept. 28, 2015) (citing *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010)); *see Jones v. Saul*, 2020 WL 5752390, at *18 (N.D. Tex. Aug. 24, 2020) (Ramirez, J.) (applying harmless error standard to factual errors made in the RFC analysis)*, rec. adopted*, 2020 WL 5747873 (N.D. Tex. Sept. 25, 2020) (Godbey, J.). Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err. *Jones*, 2020 WL 5752390, at *18; *see Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

The Court "cannot ignore or disregard statements made by the ALJ in support of the decision," as "[t]he decision itself is the only insight [it has] into the ALJ's decision making process." *Reese*, 2020 WL 6804513, at *5 (citation omitted). The misconception that Plaintiff requested her prescription for a wheelchair, that she only needed a wheelchair for outdoor events, and that her prescribed disability placard was temporary were central to the ALJ's credibility findings and, in turn, to the RFC determination. Courts consistently find such factual errors require remand. *See Reese*, 2020 WL 6804513, at *5 & *5 n.11 (cases collected).

Given the evidence regarding Plaintiff's need for an assistive device to ambulate, the Court is not convinced that the lack of incorporation of any limitation regarding impaired mobility in the RFC is sufficient to accommodate all of Plaintiff's limitations or negate the ALJ's fundamental mistake as to Plaintiff's wheelchair use and placard prescription. It is certainly conceivable that the correct information could have impacted the ALJ's interpretation of Plaintiff's credibility, evidence of record, and the resulting RFC.

Moreover, there are significant inconsistencies, or at least gaps in explanation, that may have been resolved in Plaintiff's favor without the ALJ's factual mistakes. *See Reese*, 2020 WL 6804513, at *7 (citation omitted). For example, it is unclear how Plaintiff, who may need an assistive device to ambulate, can also walk or stand for two hours per day. The ALJ provides no explanation for this apparent discrepancy, and the Court cannot speculate as to how these findings should be reconciled.

During the hearing, the ALJ failed to ask the VE a hypothetical that included any limitations related to a handheld assistive device to ambulate. The RFC likely would have contained different limitations without these errors, requiring the ALJ to pose different hypothetical questions to the VE. *See Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (holding a disability determination cannot stand when it is based on a VE's answers to hypotheticals that do not include all of claimant's limitations). Therefore, the Court cannot determine whether Plaintiff's need for an assistive device would have any effect on the jobs available to Plaintiff based on the VE's testimony because a sedentary exertional level is not necessarily consistent with the need for a wheelchair or other assistive device to ambulate. *See Joseph B. v. Saul*, 2020 WL 7024310, at *5 (S.D. Tex. Nov. 30, 2020) (citation omitted). It is conceivable that a different administrative conclusion would have been reached if the ALJ did rely on mistaken factual findings when determining Plaintiff's RFC.

The ALJ's consideration of factual mistakes in his RFC analysis regarding Plaintiff's need for an assistive device to ambulate prejudiced Plaintiff and was not

12

harmless error. Accordingly, the ALJ's RFC determination is not supported by substantial evidence and remand is required. While Plaintiff argues the Commissioner's decision should be reversed and remanded on other grounds, this finding pretermits consideration of Plaintiff's other arguments.

## Recommendation

The District Court should REVERSE the Commissioner's decision and REMAND the case for further administrative proceedings.

**SO RECOMMENDED.**

August 1, 2022.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).